# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PETER BEEKHOF,

    Plaintiff,

v.

FIRST HORIZON HOME LOAN CORPORATION, *et al.*,

    Defendants.

Case No. 3:11-cv-00557-LDG (WGC)

**ORDER**

    Quality Loan Service Corporation (Quality), First Tennessee Bank National Association (successor in interest by merger to First Horizon Home Loan Corporation) (First Horizon),[1] and MetLife Bank, N.A. (MetLife), move to dismiss (## 9, 13) Peter Beekhof's complaint pursuant to Fed. R. Civ. Pro. 12(b)(1), 12(b)(6), and 9(b).[2] Beekhof

---

    [1] Though First Tennessee is successor in interest to First Horizon, for ease of reference and consistency, the Court will refer to the defendant as First Horizon as all allegations of the complaint concern the actions of First Horizon, rather than First Tennessee.

    [2] Beekhof has not filed proof of service of the summons and complaint on any of the defendants. In their Statement Concerning Removal, First Tennessee acknowledges that it was served but that MetLife has not been served.

opposes the motions (## 12, 23) and also moves for a declaration of prior exclusive jurisdiction (#27).

Background

This matter is the second complaint filed by Beekhof that has come before the undersigned regarding the foreclosure of property located at 1125 Mill Street, Gardnerville, Nevada. The prior complaint, filed as a putative class action with 80 named plaintiffs (including Beekhof concerning the Mill Street property), named (among others) the defendants who move to dismiss the present complaint: Quality, First Tennessee, and MetLife as defendants. The prior original complaint alleged claims for wrongful foreclosure, unjust enrichment, conspiracy to commit wrongful foreclosure, conspiracy to commit fraud, injunctive relief, and declaratory relief. The present complaint alleges claims for fraud in the inducement, violation of NRS 107.080, conspiracy to violate NRS 107.080, breach of the covenant of good faith and fair dealing or interference in contractual relations, unjust enrichment, slander of title, and abuse of process.[3]

Many of the allegations and assertions in both the prior and present complaint mirror each other. In the present action, the plaintiff alleges at the outset of his complaint:

> This case arises because of the foreclosure commenced on March 31, 2009 on Plaintiff's primary residence in Douglas County, Nevada. Not only was the Plaintiff the victim of fraud, unlawful and predatory lending and an underlying conspiracy to commit fraud, but he is also facing the pending loss of his home through foreclosure initiated and advanced by Defendants in violation of the notice and standing requirements of Nevada foreclosure law. Plaintiff's loan at issue in this action was taken out on April 25, 2005.
> In addition, the challenged foreclosure is based upon a Deed of Trust and a Note in the mortgage that is no longer held by the same entity or party and was based upon a Deed of Trust that was flawed at the date of origination of the loan. The "lender" on the Deed of Trust, FIRST HORIZON HOME LOANS ("First Horizon"), was not the actual lender or source of the monies that funded Plaintiff's loan. The money to fund the Plaintiff loan [sic] came from investors. First Horizon acted merely as a broker for the purpose of obtaining Plaintiff's signature on loan documents and, therefore, First

---

[3] First Horizon is identified as a defendant only in the first (fraud in the inducement) and fourth (conspiracy to violate §107.080) claims.

Horizon was never the lender or owner of the beneficial interest in the Deed of Trust or the obligation purportedly secured thereby.

In the prior original complaint, the plaintiff alleged at the outset of his complaint:

> This case arises because the Plaintiffs were the victims of unlawful and wrongful foreclosures and/or an underlying conspiracy to commit fraud that resulted in foreclosures by the Defendants on the Plaintiffs' homes or, the Defendants are threatening in the near future to foreclose on the homes of the Plaintiffs. These foreclosures were, and are, based upon a deed of trust and a note in each mortgage that are no longer held by the same entity or party and are based upon deeds of trust that were flawed at the date of origination of the loan because the Mortgage Electronic Registration Service (MERS) was named as the beneficiary or nominee of the lender on the deeds of trust and because the naming of MERS as the beneficiary was done for the purpose of harming the borrower. The beneficiaries were never intended to be the lenders and now the servicer bank Defendants declared the default on these loans even though the true beneficiaries have not declared a default and have no further interest in the notes and, finally, the obligations reflected by the notes executed by Plaintiffs allegedly secured by the MERS deeds of trust have been satisfied with the result that there exists no obligation on which to base any foreclosure on the properties owned by the Plaintiffs and the members of the class.

In addition, paragraph 21 of the present complaint alleges:

> The foreclosure complained of herein has been commenced and is being advanced by parties who have no right to declare default, have failed to provide an accounting of the amounts due and owing to the true beneficiary, who is the only party with the right to declare such default and direct a sale through a trustee.

Paragraph 115 of the prior original complaint alleges:

> The foreclosures complained of herein were initiated against Plaintiffs by parties who have and had no standing to commence or maintain any foreclosure proceeding, both by the express language of the deeds of trust which required that the beneficiary/party owed the obligation declare the default and direct the sale, and by the laws governing the commencement and advancement of foreclosure proceedings which required the true beneficiary to declare such default and direct such sale.

The prior complaint was transferred to the District of Arizona as part of a multi-district litigation. The MDL court retained jurisdiction of claims related to the formation and/or operation of the MERS system, and remanded plaintiff's claim for unjust enrichment based on loan origination issues, and plaintiff's claims for injunctive and declaratory relief to the extent they were based on loan origination issues. On January 21, 2011, the undersigned

granted the motions of numerous defendants, including MetLife, to dismiss the prior complaint's claim of unjust enrichment, and the claims of injunctive and declaratory relief to the extent they were based on the loan origination issues underlying the claim of unjust enrichment.

On June 4, 2011, the plaintiff (as part of the putative class action) filed a consolidated amended complaint in the MDL. That consolidated amended complaint alleged, *inter alia*, a claim that Quality violated NRS §107.080 with respect to the same property as to which Beekhof alleges, in the present suit, that Quality violated §107.080.

Motion to Dismiss

The defendants' motions to dismiss, to the extent brought pursuant to Fed. R. Civ. P. 12(b)(6), challenge whether the plaintiff's complaint states "a claim upon which relief can be granted." In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." As summarized by the Supreme Court, a plaintiff must allege sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, at 555 (citations omitted). In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F3.d 895, 900 (9th Cir. 2007).

However, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal* 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.,* at 1950. Thus, this court considers the conclusory statements in a complaint pursuant to their factual context.

To be plausible on its face, a claim must be more than merely possible or conceivable. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief." *Id.,* (citing Fed. R. Civ. Proc. 8(a)(2)). Rather, the factual allegations must push the claim "across the line from conceivable to plausible." *Twombly.* 550 U.S. at 570. Thus, allegations that are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly establish a claim. *Id.,* at 567.

The Court will dismiss Beekhof's claims. To the extent review of his present claims is not barred by his prior lawsuit, due either to issue preclusion or exclusive jurisdiction in that prior matter, his present complaint fails to state a cognizable claim. Initially, Beekhof's argument that *res judicata* does not apply because he voluntarily dismissed his prior case is without merit. First, Beekhof did not voluntarily dismiss his prior <u>case</u>. At most, as he filed his voluntary dismissal only in that portion of his prior case being heard by the undersigned, which heard those claims remanded from the MDL action to this district, Beekhof could only dismiss his remanded claims. Second, Beekhof voluntarily dismissed, without prejudice, only those remanded claims that remained pending in this district at the time he filed his voluntary dismissal. Prior to his voluntary dismissal, the undersigned, as the judge presiding over the prior remanded claims, granted MetLife's and First Horizon's motions to dismiss Beekhof's claims for unjust enrichment, injunctive relief, and declaratory

5

relief that had been remanded from the MDL court.  Third, Beekhof's reference to his failure to oppose a number of the pending motions to dismiss his remanded claims, which operated as a consent to the granting of the motions under Local Rule 7-2(d), is irrelevant. The consent resulting from a failure to oppose under LR 7-2(d) is a consent to the granting of the motion on the merits of that motion.  Beekhof's failure to oppose operates as an agreement, on the merits of the pending motions, that his prior complaint failed to state a cognizable claim.  Beekhof cannot escape the preclusive effect of that order by now asserting that he "consented" to the granting of the motion, or by arguing that he later voluntarily dismissed whatever claims remained pending.

      Beekhof's argument that the exercise of jurisdiction by the MDL court over the non-remanded claims does not defeat the jurisdiction of this Court is also without merit.  At issue is whether another court (state or federal) is exercising jurisdiction over the *res* in an action that is *in rem* or *quasi in rem* in nature.  His assertion that his prior action attacked the instrument relied upon for the foreclosure while his present action attacks the parties executing the foreclosure is irrelevant.  Both actions concern the propriety of foreclosure of the same *res*, and the first court to have jurisdiction over that *res* has exclusive jurisdiction over that *res*.  Further, that prior action precludes this Court from revisiting the propriety of the instruments relied upon in the foreclosure.  Stated otherwise, even assuming that this Court could exercise jurisdiction over the *res*, the Court would be limited to considering only those arguments that proceed on the basis that the underlying instruments are valid.  The allegations of Beekhof's complaint clearly indicate that, as in his prior complaint, the present complaint attacks the instruments underlying the foreclosure.

      <u>Fraud in the Inducement</u>

      As noted, what remains of Beekhof's claims (after eliminating all allegations and claims barred due to Beekhof's prior complaint) fails to state cognizable claims.  Beekhof concedes he cannot maintain his claim for fraud in the inducement against Quality.

6

Conceding that his loan originated in April 2005, and that he filed his present action in July 2011, Beekhof argues[4] his claim against First Horizon[5] is not barred by the three-year statute of limitations because the Defendants concealed the facts underlying his claim until they initiated the foreclosure process in 2009.  Beekhof's argument for equitable tolling is general and conclusory, and does not address any specific false representation upon which his claim relies.  In opposing First Horizon's argument that Beekhof failed to allege his claim with particularity, Beekhof identifies only a single false representation: that First Horizon "intentionally misled [him] to believe that he qualified for the loan under residential loan underwriting standards used in the industry."  The specific allegation of Beekhof's complaint is that "First Horizon . . . represented to the Plaintiff that he qualified for a loan under residential underwriting standards used in the industry."  Complaint, p.13, ¶40.  "The doctrine of equitable tolling provides that where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered."  *Federal Election Com'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996).  Beekhof's complaint (and his opposition) lacks any allegation of fact that would permit an inference that Beekhof remained in ignorance regarding the falsity of this representation until after July 1, 2008.  Rather, the opposition contains numerous allegations that preclude such an inference.  Beekhof alleges "[t]he loan was based on nothing.  No pay stubs, bank statements, W-2s or tax returns, or any other proof of income was required.  The loan was approved based exclusively upon the artificially inflated value of the home and information that Plaintiff had on file but was grossly outdated."  Beekhof further alleges that when he applied for his

---

[4] The argument is plainly cut-and-paste, as evidenced by, among other errors, his inability to consistently refer to himself in the masculine.

[5] Beekhof did not name MetLife as a defendant in the fraud in the inducement claim.

7

loan, First Horizon's employee "went to Beekhof's place of employment and used the information he had on file which was outdated and unverified." In light of these allegations, the Court cannot infer that, subsequent to First Horizon's alleged false representation (which necessarily occurred prior to the origination of the loan in April 2005), the defendant remained in ignorance without any fault or want of care or diligence on his part until after July 1, 2008. While Beekhof generally asserts that he did not discover facts until the foreclosure process commenced in 2009, he offers no argument indicating how he remained ignorant of the falsity of the representation until the initiation of the foreclosure process.

   Beekhof then argues that he alleged facts showing First Horizon knew that its representation was false by alleging that First Horizon knew that its business practice was creating an unnatural demand for housing, causing home prices to escalate above their reasonable value, and further knew that the continued practice of lending money to a large number of unqualified buyers would cause the market to crash. The argument is irrelevant, as the alleged false representation was that Beekhof was qualified for a loan. Merely alleging that First Horizon <u>knew</u> the falsity of the representation that he was qualified for a loan is insufficient. Beekhof has the obligation, not of alleging a conclusion of knowledge, but of alleging facts supporting the plausible inference that First Horizon knew the representation was false. If the facts supporting an inference of First Horizon's knowledge are those facts previously noted by the Court and alleged in the complaint (First Horizon's reliance on a visit to Beekhof's place of employment where it relied on outdated information, First Horizon's lack of reliance on pay stubs or W-2s, etc.,), then the allegation of those same facts showing First Horizon's knowledge precludes Beekhof's reliance on equitable tolling to save his claim, as these same facts were necessarily known to Beekhof given that he provided outdated information and did not provide pay stubs or W-2s.

In sum, Beekhof's claim for fraud in the inducement accrued in April, 2005, and he has not shown that the claim should be equitably tolled until after July 1, 2008. Rather, the allegations of his complaint preclude any such inference. Therefore, the Court will dismiss this claim with prejudice as to Quality and First Horizon. The Court would further note that it would also enter such an order as to MetLife if Beekhof had alleged this claim against MetLife.

§107.080 Claims

Pursuant to Beekhof's sub-title to his second claim for relief for violations of §107.080, he has brought it against MetLife and Quality, but not against First Horizon. However, he has named all three as defendants in his third claim for relief for conspiracy to violate §107.080.

As noted by all Defendants, §107.080 does not provide for a private right of action for tort damages.[6] Rather, the only private remedy provided by §107.080 is to obtain a declaration that a foreclosure sale is void, where the person authorized to make the sale did not substantially comply with the relevant statutes, including provisions within §107.080. As the only private remedy provided within §107.080 is a declaration regarding the res, exclusive jurisdiction over this claim rests solely with the MDL court in Beekhof's prior action.

Further, even if Beekhof could maintain his claim against the Defendants on his claim for violating §107.080 in his present complaint, his default precludes any meaningful relief under §107.080. In opposition, Beekhof argues that Quality lacked authority to initiate foreclosure proceedings. Absent from the complaint, however, is any allegation of fact permitting a plausible inference that, as of July 1, 2011, Quality lacked authority to

---

[6] Beekhof mis-states the defendants' argument. The defendants did not argue that §107.080 does not provide a private right of action, but argued that §107.080 does not provide a private right to tort damages.

proceed with the foreclosure sale.  Even assuming Quality lacked authority to initiate foreclosure proceedings, Beekhof's uncured default and lack of tender to cure that default preclude any meaningful remedy.

Beekhof's opposition fails to respond to the defendants' arguments that he cannot maintain his claim for conspiracy to violate §107.080 if his §107.080 claim fails, and that he has failed to allege the conspiracy with the requisite specificity.  The court agrees that Beekhof has failed to allege, with requisite specificity, facts supporting a plausible inference of a conspiracy to violate §107.080.

Accordingly, the Court will dismiss Beekhof's claims for violation of §107.080 and for conspiring to violate §107.080.

<u>Breach of Covenant of Good Faith and Fair Dealing</u>

Beekhof concedes that this claim should be dismissed as to Quality.  Beekhof's opposition to the motion of MetLife and First Horizon is confusing.  He has titled the subsection "Plaintiff's Breach of Duty of Good Faith Claim is Not Made Against First Horizon."  This would suggest a concession that the claim should also be dismissed as to First Horizon.  The remainder of Beekhof's argument in this subsection of his opposition, however, refers only to First Horizon.  Thus, lacking from Beekhof's opposition is any opposition to MetLife.  Having reviewed Beekhof's complaint, which alleges only conduct by MetLife and does not reference First Horizon (other than to name it in the sub-title to the claim), the Court finds that Beekhof also concedes that his claim is not made against First Horizon, and that Beekhof's subsequnt references to First Horizon are erroneous and were intended as references to MetLife.

Even as to MetLife, Beekhof has not proffered any meaningful or understandable argument suggesting that he alleged a viable claim for breach of the implied covenant of good faith and fair dealing.  The opposition fails to identify any allegation suggesting that, pursuant to the terms of the contract between MetLife and Beekhof, the contract imposed a

10

good faith obligation on MetLife to modify the terms of the Beekhof's loan.  Dismissal of the claim for breach of good faith is warranted as to each of the moving defendants.

Unjust Enrichment

Beekhof's claim of unjust enrichment fails against MetLife and First Horizon as barred by res judicata and because he cannot bring such a claim against them for actions taken pursuant to a contract to which he is a party.  Beekhof's claim of unjust enrichment fails as to Quality because (a) he cannot bring such a claim against Quality for actions taken pursuant to a contract to which he is a party, and (b) he has not alleged that he conferred a benefit on Quality that is not governed by a contract to which he is a party.  Dismissal of these claims is appropriate as to each of the moving defendants.

Slander of Title

"[A] claim for slander of title requires 'false and malicious communications, disparaging to one's title in land, and causing special damages.'" *Exec. Mgmt., Ltd. v. Ticor Title Co.*, 963 P.2d 465, 478 (Nev. 1998).  Once again, Beekhof's opposition to MetLife and First Horizon's motion is confusing.  The opposition addresses only First Horizon and Quality, without any mention of MetLife.  In his complaint, however, Beekhof identifies as defendants in the subtitle to this claim only MetLife and Quality.  In opposition, Beekhof asserts (without reference to his complaint) that he has made "multiple statements" that Quality had no authority to initiate or complete foreclosure on his property. He further alleges, in opposition to MetLife's and First Horizon's motion, that First Horizon did not provide Quality with a declaration of default.

In his complaint, Beekhof alleges that MetLife and Quality caused a defective notice of default to be recorded against the title to his property that claims an interest in the property.  He further alleges that any purported transfer in the property was wrongful and invalid because the Notice of Default was invalid, and thus foreclosure will be invalid.  As between Beekhof's complaint and his oppositions, the Court cannot discern any allegation

of fact permitting a plausible inference of a false communication disparaging Beekhof's title. Beekhof offers no authority suggesting that Quality's communications of authority to initiate or complete foreclosure on his property constitute a claim of ownership in the property. Further, to the extent Beekhof is alleging the slander occurred in the communication of his default, the fact of his default precludes a finding that such communication of his default was either false or malicious. Dismissal of Beekhof's claim for slander of title is appropriate as to each of the moving defendants.

Abuse of Process

Abuse of process requires the following legal elements: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879 (2002). Legal process (in the context of a claim for abuse of process) refers to process taken pursuant to judicial authority. The foreclosure process at issue in this action was a non-judicial foreclosure, and thus not a legal process the abuse of which would support a claim for abuse of process. That the result of a non-judicial foreclosure has "legal implications," or might ultimately result in an unlawful detainer action does not transform a non-judicial foreclosure into a legal process taken pursuant to judicial authority. Dismissal of this claim is appropriate as to each of the moving defendants.

THEREFORE, for good cause shown,

THE COURT **ORDERS** that Quality Loan Service Corporation's Motion to Dismiss (#9) is GRANTED; Quality Loan Service Corporation is DISMISSED from this action.

THE COURT FURTHER **ORDERS** that the Motion to Dismiss (#13) of First Tennessee Bank National Association (successor in interest by merger to First Horizon Home Loan Corporation) and MetLife Bank, N.A. is GRANTED; First Tennessee Bank

National Association (successor in interest by merger to First Horizon Home Loan Corporation) and MetLife Bank, N.A. are DISMISSED from this action.

THE COURT FURTHER **ORDERS** that Plaintiff's Motion for Declaration of Prior Exclusive Jurisdiction (#27) is DENIED as moot.

DATED this _____ day of March, 2012.

_____
Lloyd D. George
United States District Judge